ANDREW V. JABLON (SBN 199083)
E-Mail: ajablon@rpblaw.com
RESCH POLSTER & BERGER LLP
1840 Century Park East, 17th Floor
Los Angeles, California 90067
Telephone: 310-277-8300
Facsimile: 310-552-3209

JANIE BYALIK, ESQ. (Pro Hac Vice)
E-Mail: jbyalik@pashmanstein.com
PASHMANSTEIN WALDER HAYDEN, P.C.
Court Plaza South
21 Main Street, Suite 200
Hackensack, NJ 07601
Telephone: 201-488-8200
Facsimile 201-488-5556

Attorneys for Plaintiff, Mark Tucker, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| MARK TUCKER, INC., <br><br> Plaintiff, <br><br> vs. <br><br> CATHY JEAN, INC., a California corporation, CARL JONES, AKA BUD JONES, an individual, CATHY JEAN GRICE, an individual, and DOES 1-10, inclusive, <br><br> Defendants. | Case No. 8:16-cv-01095-JVS (DFMx) <br><br> **PLAINTIFF MARK TUCKER INC.'s OMNIBUS OPPOSITION TO DEFENDANTS CATHY JEAN, CARL JONES, AND CATHY JEAN GRICE'S MOTIONS TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** <br><br> **[Request for Judicial Notice Filed Concurrently]** <br><br> Judge: Hon. James V. Selna <br> Date: September 12, 2016 <br> Time: 1:30 p.m. <br> Crtrm.: 10C <br><br> Trial Date: None Set |

528343.1

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................. 8

II.   SUMMARY OF FACTUAL ALLEGATIONS ............................... 8

III.  LEGAL ARGUMENT ......................................................... 11

   A.    Legal Standard on a Motion to Dismiss ............................ 11

   B.    MTI Adequately Pleaded Alter-Ego Liability. ..................... 12

      1.    MTI Alleged Sufficient Facts to Establish a "Unity of Interest and Ownership" ............................................. 13

      2.    MTI Alleges Sufficient Facts to Plead an Inequitable Result. ................................................................. 19

   C.    MTI Has Adequately Plead Its Fraud Claims For Relief. ....... 23

      1.    Fraudulent Concealment is Adequately Plead.................... 23

      2.    Fraudulent Transfer is Adequately Plead ........................ 26

      3.    The Economic Loss Rule Does Not Bar Plaintiffs' Claims ...... 28

   D.    MTI Has Adequately Pled Standing As a Third-Party Beneficiary. ......................................................... 29

   E.    The *Remedy* Of Punitive Damages Is Available Where The Underlying Cause of Action Is Assignable .......................... 30

   F.    Leave To Amend Should Be Granted ............................... 32

IV.   CONCLUSION ................................................................. 32

resch polster & berger llp

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ............................................................. 12, 16, 18

*Axon Solutions, Inc. v. San Diego Data Processing Corp.*
  No. 09 CV 2543, 2010 WL 1797028, at *3 (S.D. Cal. May 4, 2010)................. 16

*In re Badiou*
  527 B.R. 692 (Bankr. E.D. Cal. 2015) ...................................... 30, 31, 32

*Bell Atlantic Corp v. Twombly*
  550 U.S. 544 (2007) ............................................................. 12, 16, 18

*Bly–Magee v. California*
  236 F.3d 1014, 1019 (9th Cir.2001) ................................................ 23

*Bosse v. Crowell Collier & Macmillan*
  565 F.2d 602, 611 (9th Cir.1977) ................................................... 23

*Bruns v. Ledbetter*
  583 F.Supp. 1050, 1052 (S.D.Cal.1984) ............................................ 19

*Conley v. Gibson*
  355 U.S. 41, 45-46 (1957) ........................................................... 11

*Cuson v. Md. Cas. Co.*
  735 F.Supp. 966 (D.Haw.1990)..................................................... 32

*Daewoo Electronics America Inc. v. Opta Corp.*
  2013 WL 3877596 (N.D. Cal. July 25, 2013) ........................................ 14

*Diehl v. Starbucks Corp.*
  No. 12CV2432 AJB BGS, 2014 WL 295468, at *14 (S.D. Cal. Jan.
  27, 2014) ............................................................................... 31

*Dollar Tree Stores, Inc. v. Toyama Partners, LLC*
  No. C 10–325 SI, 2011 WL 872724, at *2 (N.D.Cal. Mar. 11, 2011)................. 20

*F.D.I.C. v. W.R. Grace & Co.*
  691 F.Supp. 87 (N.D.Ill.1988)..................................................... 32

*Fed. l Reserve Bank of San Francisco v. HK Systems*
    No. C–95–1190, 1997 WL 227955, at *6 (N.D. Cal. Apr. 24, 1997).................. 16

*Firstmark Capital Corp. v. Hempel Fin. Corp.*
    859 F.2d 92 (9th Cir. 1988) ........................................................ 21

*Hightower v. Tilton*
    2012 WL 1194720, *3 (E.D. Cal. Apr. 10, 2012).................................. 18

*Hydranautics v. Filmtec Corporation*
    70 F.3d 533, 536 (9th Cir. 1995) ................................................ 12

*Johnson v. Serenity Transp., Inc.*
    141 F.Supp.3d 974, 986 (N.D. Cal. 2015)........................................ 22

*Kennedy Funding, Inc. v. Chapman*
    No. C 09-01957 RS, 2010 WL 2528729, at *9 (N.D. Cal. June 18,
    2010) .......................................................................... 27

*Laguna v. Coverall North America, Inc.*
    2009 WL 5125606, at *2 ................................................ 11, 16, 18

*United States ex rel. Lee v. SmithKline Beecham, Inc.*
    245 F.3d 1048 (9th Cir. 2001) .................................................. 32

*Long v. Graco Children's Products Inc.*
    No. 13-CV-01257-WHO, 2013 WL 4655763, at *4 (N.D. Cal. Aug.
    26, 2013)....................................................................... 23

*Maffei v. Allstate Ins. Co.*
    2006 U.S. Dist. LEXIS 66726 (E.D. Cal. Sept. 7, 2006) ......................... 29

*Missud v.Oakland Coliseum Joint Venture*
    2013 U.S. Dist. LEXIS 29915 (N.D. Cal. Mar. 5, 2013) ......................... 28

*MP Nexlevel of California, Inc. v. CVIN, LLC*
    No. 14–CV–288 LJO GSA, 2014 WL 5019639, *16 (E.D.Cal. Oct.
    7, 2014)........................................................................ 20

*Munday v. Real Estate Advisors, Inc.*
    No. C-95-20143-JW, 1995 WL 364301, at *3 (N.D.Cal. June 9,
    1995)........................................................................... 18

resch polster & berger llp

528343.1

3

*Neilson v. Union Bank of California, N.A.*
290 F.Supp.2d 1101, 1117 (C.D.Cal.2003) .......................................................... 19

*Newport v. Fact Concerts*
453 U.S. 247 (1981) ............................................................................................... 32

*Occupational-Urgent Care Health Sys., Inc. v. Sutro & Co.*
711 F. Supp. 1016, 1020 (E.D. Cal. 1989) ............................................................ 19

*Oppel v. Empire Mut. Ins.*
517 F.Supp. 1305 (S.D.N.Y.1981) ....................................................................... 32

*Oracle USA, Inc. v. XL Global Servs.*
2009 U.S. Dist. LEXIS 59999 (N.D. Cal. July 13, 2009) ............................... 28, 29

*Pub. Serv. Mut. Ins. Co. v. Liberty Surplus Ins. Corp.*
51 F. Supp. 3d 937, 951 (E.D. Cal. 2014) ............................................................ 32

*In re Quarterdeck Office Sys., Inc. Sec. Litig.*
No. CV-92-3970 DWW(GHKX), 1992 WL 515347, at *2 (C.D.
Cal. Nov. 4, 1992) ................................................................................................. 19

*Silver v. Goldman Sachs Group, Inc.*
2011 U.S. Dist. LEXIS 54630 (C.D. Cal. May 19, 2011) ..................................... 28

*Stewart v. Screen Gems-Emi Music, Inc.*
81 F.Supp.3d 938, 962 (N.D. Cal. Mar. 2, 2015) ................................................. 18

*Swartz v. KPMG LLC*
476 F.3d 756, 764 (9th Cir. 2007) ........................................................................ 25

*Twentieth Century Fox Film Corporation v. Marvel Enterprises, Inc.*
220 F.Supp.2d 289, 292 (S.D.N.Y. 2002) ............................................................ 12

*U.S. v. Secapure*
No. C 07-1050, 2008 WL 820719 at *6 (N.D.Cal. Mar.26, 2008) ...................... 27

*United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*
660 F. Supp. 2d 1163 (C.D. Cal. 2009) ................................................................ 28

*United States v. Redwood City*
640 F.2d 963, 966 (9th Cir.1981) ......................................................................... 11

*Worldwide Travel, Inc. v. Travelmate U.S., Inc.*
  2015 WL 1013704, at *6 (S.D. Cal. Mar. 9, 2015) ............................................... 13

*Yost v. Nationstar Mortg.*
  LLC, 2013 U.S. Dist. LEXIS 128504 (E.D. Cal. Sept. 6, 2013) ......................... 28

*Zatkin v. Primuth*
  551 F. Supp. 39, 42 (S.D. Cal. 1982) .................................................................. 23

**California Cases**

*Automotriz Del Golfo De California S. A. De C. V. v. Resnick*
  47 Cal. 2d 792, 796 (1957) ............................................................................. 14, 20

*Boschma v. Home Loan Center, Inc.* (2011)
  198 Cal.App.4th 230, 248 .................................................................................... 23

*Continental Cas. Co. v. Royal Ins. Co. of America*
  219 Cal.App.3d 111, 268 Cal.Rptr. 193 (1990) ................................................... 32

*Doe v. City of Los Angeles* (2007)
  42 Cal.4th 531, 550 ....................................................................................... 15, 18

*Emmons v. Barton*
  109 Cal. 662 (1895) ............................................................................................. 31

*Filet Menu, Inc. v. C.C.L. & G., Inc.*
  79 Cal.App.4th 852, 866, 94 Cal.Rptr.2d 438, 447 (2000) ................................. 26

*First Western Bank & Trust Co. v. Bookasta*
  267 Cal.App.2d 910 (1968) ................................................................................. 19

*French v. Orange County Inv. Corp.* (1932)
  125 Cal. App. 587 ......................................................................................... 30, 31

*Jackson v. Rogers & Wells*
  210 Cal. App. 3d 336 (1989) ........................................................................ 30, 31

*Kizer v. County of San Mateo*
  53 Cal.3d 139 ....................................................................................................... 31

*Leek v. Cooper*
  194 Cal. App.4th 399, 417-18 (2011) ................................................................. 14

*Limandri v. Judkins* (1997)
    52 Cal.App.4th 326, 336-337 ................................................................23

*Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft, LLP* (1999)
    69 Cal.App.4th 223, 249–250 .............................................................14

*NEC Elecs. Inc. v. Hurt*
    208 Cal.App.3d 772, 777–78 (Ct. App. 1989) ....................................22

*Nelson v. Exxon Mobil Corp.*
    179 Cal.App.4th 663 (2009) ................................................................31

*People v. Superior Court* (*Jayhill Corp.*)
    9 Cal. 4th 283 (1973) ...................................................................30, 31

*Riddle v. Leuschner* (1959)
    51 Cal.2d 574, 581-582 .......................................................................22

*Rued v. Cooper*
    109 Cal. 682, 693 (1893) .....................................................................31

*Rutherford Holdings, LLC v. Plaza Del Rey*
    223 Cal.App.4th 221, 235 (2014), ................................................15, 17

*Schauer v. Mandarin Gems of California, Inc.*
    125 Cal. App. 4th 949, 957 (2005) ...............................................29, 30

*Schoenberg v. Benner*
    251 Cal.App.2d 154, 59 Cal.Rptr. 359 (1967) ...................................21

*Smith v. Kern Cnty Land Co.* (1958)
    51 Cal.2d 205, 209 ..............................................................................28

*Stark v. Coker*
    20 Cal.2d 839 (1942) ...........................................................................21

*Swallow v. Tungsten Products Co.*
    205 Cal. 207 (1928) ......................................................................30, 31

*Zoran Corp. v. Chen* (2010)
    185 Cal.App.4th 799, 812....................................................................14

**Other State Cases**

*Allstate Ins. Co. v. Axsom*
    696 N.E.2d 482 (Ind.App.Ct.1998) ..................................................... 32

*Kaplan v. Harco Nat'l Ins. Co.*
    716 So.2d 673 (Miss.App.Ct.1998) ...................................................... 32

**California Statutes**

California Civil Code
    § 954 ...................................................................................................... 31
    § 1559 .................................................................................................... 29
    § 3439.04(b) .......................................................................................... 27
    § 3439.05 ............................................................................................... 27

**Other Authorities**

Federal Rules of Civil Procedure, Rule 8(a)(2) ....................................... 12

Federal Rules of Civil Procedure, Rule 9(b) .................................... *passim*

Federal Rules of Civil Procedure, Rule 12(b)(6) ..................................... 12

*Federal Rules of Evidence, Rule 201* ...................................................... 10

resch polster & berger llp

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Motions to Dismiss ("Motions") filed by defendants Cathy Jean, Inc. ("CJI"), Carl Jones ("Jones"), and Cathy Jean Grice ("Grice") are premised on this Court ignoring: (1) the express allegations of the First Amended Complaint ("FAC"); (2) the plain text of exhibits thereto; and (3) controlling case law. Specifically:

1.    <u>Alter Ego</u>: Defendants' challenge to the alter ego allegations asks the Court to disregard allegations made on "information and belief", despite: (a) such pleading being expressly allowed in the Ninth Circuit; (b) many such allegations also include the source of such information and belief; and (c) Plaintiff's alter ego allegations also include factual allegations *not* made on information and belief. (Section III(B).)

2.    <u>Fraud</u>: Defendants' challenge to the fraud claims ignores detailed factual allegations in the FAC, while also seeking to misapply the economic loss rule.  (Section III(C).)

3.    <u>Third Party Beneficiary</u>: Defendants' challenge to Plaintiff's standing as a third party beneficiary ignores: (a) the subject purchase orders expressly contemplate MTI as a beneficiary (FAC, Exh. A); and (b) the purchase orders were placed through MTI with the knowledge and understanding that they would be assigned but were made for Plaintiff's benefit (FAC ¶¶ 17-22).  (Section III(D).)

4.    <u>Punitive Damages as a Remedy</u>: Contrary to CJI and Jones' contention, current case law recognizes that punitive damages – a remedy not a cause of action – are available in connection with any tort claim otherwise properly subject to assignment.  (Section III(E).)

## II.    SUMMARY OF FACTUAL ALLEGATIONS

Although the allegations comprising this case are set forth in greater detail in MTI's First Amended Complaint ("FAC"), the primary allegations are as follows.

resch polster & berger llp

MTI is a wholesale footwear company that facilitates the sale of shoes to retailers. FAC, ¶ 14.  Cathy Jean, Inc. is a retailer that purchased shoes from MTI.  In this case, MTI served as the intermediary between (a) CJI, who would notify MTI of the type, design, and quantity of shoes it wanted to purchase, and (b) the overseas entities that would fulfill the orders, manufacture and deliver the product, and invoice CJI for payment.   FAC, ¶ 15.   MTI worked with Honour Services ("Honour"), a Taiwanese company, who, placed orders with various Chinese Factories ("Factories") that manufactured the shoes for CJI.  FAC, ¶ 19.

Between approximately December, 2014 and August, 2015, CJI placed a series of purchase orders with MTI, with the understanding that the purchase orders would be assigned to Honour and the Factories and CJI would be invoiced by Honour for payment.  FAC, ¶ 18.  Each purchase order was delivered to CJI "FOB China", meaning, that once the Factories manufactured the shoes, they would be delivered to CJI's agent in China.  FAC, ¶ 17.  Moreover, because the shoes were custom-made specifically for CJI, there was typically a several month gap between the time the order is placed and the "FOB" delivery date.  Thus, although orders may have been placed in early 2015, many of those orders were not delivered to CJI until months later.  See Exhibit 2 to FAC (Invoices reflecting substantial delay between "order date" and "confirmed FOB date").

Although MTI does not traditionally extend payment terms (either directly or through the companies it works with, such as Honour) to its retail customers, because of its longstanding relationship with CJI, MTI made a special exception by extending CJI the courtesy of making payment 90 days from delivery of the merchandise to CJI's agent in China.  FAC, ¶ 23.

Almost immediately from the time it placed its first several orders in January 2015, CJI began missing occasional payment deadlines.  CFA, ¶ 25.  By October, 2015, CJI ceased making payments altogether.  FAC, ¶ 25.  For months, CJI's owner and sole shareholder, Carl Jones and his daughter and the company's Chief

1   Operating Officer, Cathy Grice, led MTI to believe that CJI's payments were
2   forthcoming, long enough for all of the orders to have been filled and shipped.
3   FAC, Exh. 2.  Only after the goods were delivered and only after numerous repeated
4   inquiries as to the status of payment did Jones and Grice inform MTI that CJI was in
5   dire financial straights and had been experiencing cash flow problems for some
6   time.  FAC, ¶ 27.  MTI later learned that in August, 2015, CJI's bank cancelled the
7   company's line of credit and CJI had no prospect of investors given the company's
8   poor financial condition.  FAC, ¶ 27.  Moreover, a month earlier, in July, 2015, CJI
9   was ordered by the Central District of California, Southern Division to deposit into
10  escrow $716,334 resulting from its failure to pay another vendor for shoe orders.
11  <u>See</u> Exhibit A to Request for Judicial Notice ("RJN").  Apparently, in February,
12  2015, Asean Corporation, an affiliate of Steve Madden, filed suit against CJI
13  alleging that, much like here, CJI failed to remit payment for purchase orders of
14  shoes, and sought, among other relief, a writ of attachment.[1]  <u>See</u> RJN, Exh. B.

15      Needless to say, as early as February, 2015, when CJI placed only its first few
16  of the subject orders with MTI, Jones and Grice were already aware that CJI was in
17  poor financial condition and would be unable to pay its debts.  By July, 2015, CJI
18  had to make payment of nearly $750,000 in connection with the Asean lawsuit, and
19  by August, 2015, CJI lost its line of credit.  However, although by that time CJI had
20  placed many of its orders, a large portion of those orders were not yet delivered to
21  CJI.  MTI is make-up private label brand that custom makes shoes to order, and the
22  time lapse between the order date and the delivery date was at least several months.
23  Indeed, each invoice specified that the "FOB date of delivery" was two, three, and
24  even six months after the "Order date."  Compare, Exhibit 1 and 2 to FAC.  Had

---

26  [1] Although Asean Corporation's lawsuit against CJI is not detailed in the FAC, this
27  Court can take judicial notice of this fact as both the Complaint and the Order of
    Deposit into escrow in lieu of levy are public information.  *Fed. R. Evid.* 201.

1  Defendants timely informed MTI of CJI's poor financial condition and inability to

2  pay, the majority of the orders could have been canceled.

3       Instead, Jones and Grice surreptitiously concealed CJI's financial condition

4  from MTI and made MTI believe that payments were forthcoming.  Jones and Grice

5  waited until all of the orders were placed and shipped to advise MTI that CJI had

6  been "in dire financial straights" "for some time".  FAC, ¶ 27.  Jones and Grice first

7  ignored MTI's requests for payment, and then engaged in delay tactics to buy

8  themselves time to sell the inventory.  FAC, ¶ 30.  Jones and Grice continued to

9  assure MTI that payment for the merchandise was forthcoming and sought to work

10 out a payment schedule.  FAC, at ¶ 34.  Jones and Grice's assurances that payment

11 would be made stalled MTI from filing an immediate lawsuit to recover the unsold

12 merchandise and whatever assets CJI had.  Meanwhile, CJI continued selling the

13 million plus dollars of inventory at high margins through the busy holiday season.

14 FAC, ¶¶ 31-35.  With that money, and under the threat of litigation, CJI was able to

15 make a few de-minimus payments to MTI.  FAC, ¶¶ 35; 37.

16      After those initial few payments, however, CJI failed to make any further

17 payments, and Jones and Grice stopped responding to calls or emails.  By the time

18 MTI realized CJI would not pay the outstanding invoices, CJI liquidated its

19 inventory, closed its stores, shut down its website and became defunct.  FAC, ¶ 40.

20 **III.   LEGAL ARGUMENT**

21       **A.   Legal Standard on a Motion to Dismiss.**

22      Dismissal of a complaint under *Fed. R. Civ. Pro.* 12(b)(6) is appropriate only

23 in "extraordinary" cases.  *Laguna v. Coverall North America, Inc.*, 2009 WL

24 5125606, at *2 (quoting *United States v. Redwood City*, 640 F.2d 963, 966 (9th

25 Cir.1981).  "[T]he accepted rule is that a complaint is not to be dismissed 'unless it

26 appears beyond doubt that the plaintiff can prove no set of facts in support of his

27 claim which would entitle him to relief.'"  *Redwood City*, 640 F.2d at 966 (quoting

28 *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  Courts should grant a motion to

dismiss a complaint only when the factual allegations are insufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007) (the complaint's allegations must "plausibly suggest[ ]" that the pleader is entitled to relief); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  The Supreme Court made clear in *Twombly* and *Iqbal* that the notice pleading standard under FRCP 8(a)(2) "does not require 'detailed factual allegation,'" it merely "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A claim is facially plausible when "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Finally, in ruling on a *Fed. R. Civ. Pro.* 12(b)(6) motion, all of the allegations of material fact in a complaint must be "taken as true and construed in the light most favorable to the nonmoving party." *Hydranautics v. Filmtec Corporation*, 70 F.3d 533, 536 (9th Cir. 1995). The "Court must. . .draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twentieth Century Fox Film Corporation v. Marvel Enterprises, Inc.*, 220 F.Supp.2d 289, 292 (S.D.N.Y. 2002) (internal quotations omitted).

## B.    MTI Adequately Pleaded Alter-Ego Liability.

In California, a plaintiff alleging alter ego liability must establish the following two elements: "(1) such a unity of interest and ownership exists that the

personalities of the corporate and individual are no longer separate, and (2) an inequitable result will follow if the acts are treated as those of the corporation alone." *Worldwide Travel, Inc. v. Travelmate U.S., Inc.*, 2015 WL 1013704, at *6 (S.D. Cal. Mar. 9, 2015). Each element is sufficiently alleged here.

Indeed, both the "unity of interest" and the "inequitable result" elements are specifically alleged in the FAC:

- . . . *there exists a unity of interest and ownership* between CJI, on the one hand, and Jones and/or Grice, on the other hand, such that *there is no individuality and separateness* between the corporate Defendant CJI and the Individual Defendants. FAC, at ¶ 9 (emphasis added); and

- . . . adherence to the fiction of the separate existence of CJI as an entity distinct from the Individual Defendants, and each of them, *would sanction fraud and promote injustice* . . . FAC, at ¶ 13 (emphasis added).

Moreover, as discussed in detail below, the elements are substantiated by factual allegations about the circumstances that give rise to the alter ego theory and the relationships between CJI and its principals, Jones and Grice.

### 1. MTI Alleged Sufficient Facts to Establish a "Unity of Interest and Ownership"

Courts may consider a litany of factors assessing whether a "unity of interest" exists. Those facts include, but are not limited to the following: "[c]ommingling of funds and other assets. . .unauthorized diversion of corporate funds or assets to other than corporate uses; ... the treatment by an individual of the assets of the corporation as his own; ... the holding out by an individual that he is personally liable for the debts of the corporation; ... the failure to maintain minutes or adequate corporate records ...; sole ownership of all of the stock in a corporation by one individual or the members of a family; ... the failure to adequately capitalize a corporation; the total absence of corporate assets, and undercapitalization; ... the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an

1   individual or another corporation; ... the disregard of legal formalities and the failure
2   to maintain arm's length relationships among related entities; … the diversion of
3   assets from a corporation by or to a stockholder or other person or entity, to the
4   detriment of creditors. . .” *Leek v. Cooper*, 194 Cal. App.4th 399, 417-18 (2011).

5        This list is not exhaustive. These factors may be considered '[a]mong' others
6   'under the particular circumstances of each case.'” *Id.* (citing (*Morrison Knudsen*
7   *Corp. v. Hancock, Rothert & Bunshoft, LLP* (1999) 69 Cal.App.4th 223, 249–250).
8   No one single factor is determinative of alter ego status and the result depends on
9   the circumstances of each particular case.  *Zoran Corp. v. Chen* (2010) 185
10  Cal.App.4th 799, 812).  Indeed, pleading as little as only *two factors* may satisfy the
11  “unity of interest” element of an alter ego claim.  *See Leek*, 194 Cal. App. 4th at 418
12  (finding that plaintiffs proffered sufficient evidence of the “unity of interest”
13  element with “only two of the above factors: that Cooper was the sole owner of all
14  of the stock in the corporation, and that corporate formalities were disregarded”);
15  *Daewoo Electronics America Inc. v. Opta Corp.*, 2013 WL 3877596 (N.D. Cal. July
16  25, 2013) (“Daewoo pleads at least two factors in support of a unity of interest,
17  including the contentions that 'GoVideo was a mere instrumentality, agency,
18  conduit, or adjunct of Opta and/or TCL Entities” and “Opta and/or TCL Entities
19  directed and controlled GoVideo's dealings.’ . . . For these reasons, the Court finds
20  that Daewoo has properly alleged a unity of interest”); *Automotriz Del Golfo De*
21  *California S. A. De C. V. v. Resnick*, 47 Cal. 2d 792, 796 (1957) (finding unity of
22  interest based on allegations of failure to issue stock and undercapitalization).

23        Here, MTI alleged much more than the minimum information required to
24  plead a “unity of interest and ownership” between CJI and its principals, Jones and
25  Grice.  MTI alleged many of the relevant factors courts consider in assessing alter
26  ego liability, e.g. that: “no individuality and separateness [exists] between the
27  corporate Defendant CJI and the Individual Defendants” (FAC, at ¶ 9); “CJI was a
28  ‘mom-and-pop shop’ with all control exercised by the Individual Defendants” who

resch polster & berger LLP

were the company's "sole shareholder" and his daughter, who was CJI's Chief Operating Officer (FAC, at ¶¶ 9; 12); "CJI was conceived, intended and used by the individuals as a device to avoid individual obligations and liabilities, both monetary and non-monetary" (FAC, at ¶ 10); "each of [the Individual Defendants] treated and used the assets of CJI as their own personal property, and dominated, controlled and operated CJI as their own personal pocket book" (FAC, at ¶ 11); the Individual Defendants "have transferred money and assets of CJI to themselves for their own personal use and benefit and to avoid creditors, including, Plaintiff" (FAC, at ¶ 11); and that "CJI failed to adhere to corporate formalities" (FAC, at ¶ 12).

The Defendants argue that MTI's alter ego allegations are insufficiently plead because they are "boilerplate" and "conclusory", "fail to set forth any factual basis", and are improperly plead upon "information and belief." *See* CJI/Jones Opp'n, at 9-11; Grice Opp'n, at 8-9.  Every one of these contentions lack merit.

First, the allegations that the Defendants have termed "boilerplate", "conclusory" or "laundry list of alter ego factors" have repeatedly been held sufficient to state an alter ego claim.  In *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal.App.4th 221, 235 (2014), the Sixth District Court of Appeals held the following allegations sufficient to state an alter ego claim:

> Rutherford alleged that Caswell dominated and controlled PDR; that a unity of interest and ownership existed between Caswell and PDR; that PDR was a mere shell and conduit for Caswell's affairs; that PDR was inadequately capitalized; that PDR failed to abide by the formalities of corporate existence; that Caswell used PDR assets as her own; and that recognizing the separate existence of PDR would promote injustice.

*Id.* at 236.  The *Rutherford Holdings* court expressly rejected the argument that plaintiff failed to allege specific facts to support its alter ego theory, stating that plaintiff "'was required to allege only "ultimate rather than evidentiary facts."'"  *Id.* (quoting *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 550).

resch polster & berger LLP

In *Laguna v. Coverall N. Am., Inc.*, No. 09CV2131 JM (RBB), 2009 WL 5125606 (S.D. Cal. Dec. 18, 2009), the Court determined that the following allegations sufficiently stated a claim for alter ego liability:

> that Allied is the sole shareholder in Coverall and Coverall Cleaning Concepts, LLC; regularly removed cash and other assets from Coverall to minimize the ability of creditors to attach funds; did not respect normal corporate formalities (failed to keep corporate minutes and/or backdated such minutes); failed to contribute capital, issue stock, or otherwise complete the formation of these entities; and failed to provide adequate capital and operating funds.

*Id.* at *3. The *Laguna* court stated that the Supreme Court's decisions in *Twombly* and *Iqbal* only clarified that "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not survive a motion to dismiss." *Id.* at *3. However, "a complaint is sufficient if it gives the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Id.* (quoting Twombly, 550 U.S., at 515-16). The *Laguna* court found that "the complaint, at this early stage in the proceeding, adequately apprises [defendant] of the nature of the claim and the grounds for Plaintiff's claim"; that "th[e] allegations raise the right to relief beyond a mere speculative level" and "sufficiently identif[ied] the contours of an alter ego claim such that [defendant] is able to prepare a response to the SAC and to conduct discovery." *Id.; see also Axon Solutions, Inc. v. San Diego Data Processing Corp.*, No. 09 CV 2543, 2010 WL 1797028, at *3 (S.D. Cal. May 4, 2010) (denying motion to dismiss alter-ego theory when plaintiff alleged that "the City deliberately undercapitalized [the Corporation], the City and [the Corporation] commingle funds, and the City has represented that it is liable for [the Corporation]'s debts"); *Fed. l Reserve Bank of San Francisco v. HK Systems*, No. C–95–1190, 1997 WL 227955, at *6 (N.D. Cal. Apr. 24, 1997) (refusing to dismiss complaint alleging that "Eaton 'dominated and controlled' Eaton–Kenway 'to such an extent that the individuality

and separateness of the subsidiary had ceased,' that 'Eaton disregarded Eaton–Kenway's corporate form,' that 'Eaton–Kenway was so inadequately capitalized that ... its capitalization was illusory,' and that allowing the two entities to remain distinct would result in inequity"). MTI's allegations contain far more detail than what these courts have deemed sufficient to withstand a motion to dismiss.

Second, contrary to Defendants' arguments, MTI has set forth a factual basis to support at least several factors for alter-ego liability. For example, to support its allegation that CJI was undercapitalized and was intended by the individuals as a device to avoid payment obligations, MTI has alleged that both Jones and Grice have admitted that "CJI was insolvent or on the brink of insolvency at the time it placed the orders with MTI and Honour that are the subject of this action, such that they were undercapitalized at the time of the transactions at issue in this case" (FAC, at ¶ 10; *see also* FAC, at ¶¶ 27-29; 34-35). Moreover, MTI has alleged the following facts to support the allegation that Jones and Grice have transferred money and assets out of CJI to avoid creditors: that (i) CJI sold of its inventory, including the subject of the current action, but have failed to pay Plaintiff; (ii) that CJI's former counsel informed Plaintiff that the Individual Defendants provided personal guarantees on certain lease obligations and, thus, caused CJI to reach settlements with the landlords and pay other creditors in lieu of providing payment to MTI and Honour in the ordinary course of business. (FAC, at ¶ 11). In addition, MTI supports its allegations that the business was run as a "mom-and-pop shop" with all control exercised by the Individual Defendants on statements made by each of the Individual Defendants and former employees of CJI who have confirmed this fact. (FAC, at ¶ 12). MTI's alter-ego allegations contain adequate support.

To the extent Defendants argue that MTI's supporting facts are not sufficiently specific, it is universally accepted that "less particularity [of pleading] is required where the defendant may be assumed to possess knowledge of the facts at least equal, if not superior, to that possessed by the plaintiff." *Rutherford Holdings*,

223 Cal.App.4th at 236; *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 550 (stating that the doctrine of "less particularity" is appropriate where "defendant has superior knowledge of the facts, so long as the pleading gives notice of the issues sufficient to enable preparation of a defense").   All information concerning the relationship between Jones and Grice and CJI, and the internal operations of CJI are within the Defendants' exclusive possession.   MTI's allegations, therefore, are sufficiently specific to "identify the contours of an alter ego claim" to enable the Defendants to prepare a response, and the remaining facts will be developed in discovery. *Laguna*, 2009 WL 5125606, at *3.

Third, MTI's allegations plead "upon information and belief" are proper, and Defendants' objections to those allegations are without merit. The Federal Rules of Civil Procedure permit allegations "upon information and belief," including claims based on agency and alter ego. *See, e.g., Hightower v. Tilton*, 2012 WL 1194720, *3 (E.D. Cal. Apr. 10, 2012) ("[T]he rule in the Ninth Circuit is that pleading 'on information and belief' is sufficient to survive a motion to dismiss as long as the other *Iqbal-Twombly* factors are satisfied."); *Stewart v. Screen Gems-Emi Music, Inc.*, 81 F.Supp.3d 938, 962 (N.D. Cal. Mar. 2, 2015) (holding that allegations based solely on information and belief are sufficient to state a claim for alter ego).

Defendant Grice requests that the Court strike MTI's alter ego allegations made upon information and belief, claiming "allegations made 'on information and belief' must set forth the source of information and the reasons for belief.'" (Grice Opp'n, at 8, fn. 2).   There is one major flaw in Grice's argument.   The requirement concerning the source of knowledge and reasons for the belief is imposed only when assessing *fraud* allegations under Rule 9(b).   Indeed, the one and only case cited by Grice makes clear that the additional requirements of source and reasons for belief are relevant to the heightened pleading standards of a fraud claim.   *See Munday v. Real Estate Advisors, Inc.*, No. C-95-20143-JW, 1995 WL 364301, at *3 (N.D.Cal. June 9, 1995) (holding that claim for fraudulent misrepresentation "should be

specific enough to indicate at least who made the alleged misrepresentations, when the misrepresentations were made, and to whom the representations were made").

The law is clear – where fraud is plead on the basis of information and belief, a plaintiff must disclose the facts on which the belief is based and the source of the information "so as to allow each defendant and the Court to review the sources and determine, at the pleading stage, whether an inference of fraud may be fairly drawn from the information contained therein." *Occupational-Urgent Care Health Sys., Inc. v. Sutro & Co.*, 711 F.Supp. 1016, 1020 (E.D. Cal. 1989) (citations omitted) ("Plaintiffs must adequately specify the sources of their information and belief under Rule 9(b)); *In re Quarterdeck Office Sys., Inc. Sec. Litig.*, No. CV-92-3970 DWW(GHKX), 1992 WL 515347, at *2 (C.D. Cal. Nov. 4, 1992) ("where, as here, plaintiffs plead fraud on the basis of information and belief, they must disclose the facts on which the belief is based"); *Bruns v. Ledbetter*, 583 F.Supp. 1050, 1052 (S.D.Cal.1984) (party pleading corporate fraud on basis of information and belief must disclose the source of the information and the reasons for the belief). The law imposes no such requirements for pleading alter ego claims. As discussed above, MTI's Complaint more than adequately alleges facts sufficient to support the finding of an alter ego relationship between CJI and the Individual Defendants, and allegations are plead upon "information and belief" is completely appropriate.

## 2. MTI Alleges Sufficient Facts to Plead an Inequitable Result.

The "inequitable result" prong of alter ego liability addresses circumstances in which "adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice." *First Western Bank & Trust Co. v. Bookasta*, 267 Cal.App.2d 910, 914–15 (1968) (citations omitted). *See also Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1117 (C.D.Cal.2003) ("California courts generally require some evidence of bad faith conduct on the part of defendants before concluding that an inequitable result justifies an alter ego finding")).

The FAC contains sufficient evidence of Jones and Grice's bad faith to support a finding of an "inequitable result." The FAC alleges that both Jones and Grice knew, and <u>have admitted</u>, that CJI was insolvent or on the brink of insolvency at the time that it placed the purchase orders such that CJI was undercapitalized at the time of the transactions at issue. FAC, at ¶¶ 10; 27-29. Courts have held that evidence of undercapitalization is sufficient, in and of itself, to meet the inequitable result prong of an alter ego claim. *See MP Nexlevel of California, Inc. v. CVIN, LLC*, No. 14–CV–288 LJO GSA, 2014 WL 5019639, *16 (E.D.Cal. Oct. 7, 2014) ("The attempt to do corporate business without providing any sufficient basis of financial responsibility to creditors is an abuse of the separate entity and will be ineffectual to exempt shareholders from corporate debts") (quoting *Automotriz Del Golfo De California S. A. De C. V. v. Resnick*, 47 Cal. 2d 792, 306 P.2d 1 (1957)); *Dollar Tree Stores, Inc. v. Toyama Partners, LLC,* No. C 10–325 SI, 2011 WL 872724, at *2 (N.D.Cal. Mar. 11, 2011 ('the status of an entity as undercapitalized is an independent basis for inequitable result" under the alter ego doctrine).

Defendants argue that MTI's allegations that Defendants had knowledge of CJI's insolvency at the time the orders were placed are implausible, because the majority of orders were placed before CJI learned that its bank cancelled the company's line of credit. (Grice Opp'n, at 11; CJI/Jones Opp'n, at 10). <u>Defendants are wrong</u>. What is implausible is that Defendants did not know that CJI was on the brink of insolvency. That CJI's bank pulled its line of credit in August, 2015 is only one fact that MTI knows of and in no way establishes CJI solvency prior to that date. In fact, just the opposite is true. A bank does not withdraw a customer's line of credit for no reason unless that customer was unable to meet its financial obligations. Indeed, that CJI was experiencing financial difficulties much earlier than August is evidenced by the fact that it was sued in February, 2015 by another creditor for failure to pay almost three quarters of a million dollars in outstanding invoices, which lawsuit resulted in CJI paying $716,334 in July, 2015 to satisfy a

Writ of Attachment obtained against it.  See RJN, Exh. A and C.  Defendants'
assertion that the two most senior executives in this mom-and-pop operation – CJI's
owner and sole shareholder, and his daughter[2], the company's COO had no idea of
CJI's financial difficulties smacks of implausibility.  Defendants' argument that
there are "simply no facts" to show that they knew of CJI's near-insolvency at the
time the orders were placed should be rejected.[3]

Second, MTI plead additional facts alleging that the Individual Defendants
manipulated and diverted assets so as to evade liability.  E.g., MTI has alleged that

---

[2] Grice argues that the fact she is Jones' daughter is insufficient to meet Plaintiff's
burden of plausibly alleging that she is CJI's alter ego. Grice relies upon *Firstmark
Capital Corp. v. Hempel Fin. Corp.*, 859 F.2d 92 (9th Cir. 1988) where the court
refused to apply alter ego liability upon a spouse.  There, however, the question was
"whether Mrs. Hempel can be held liable as an alter ego '*if she merely passively
enjoys the benefits of the disregard of the corporate entity.*'"  *Id.* at 95 (emphasis).
*Firstmark* did not find alter ego liability because the individual was a "passive
beneficiary spouse" and that "all important management decisions including those
which brought alter ego liability in the operation of the business were made by [her
husband] While Mrs. Hempel was employed by the corporation, her employment
was primarily in a clerical capacity, not in the management capacity."  *Id.*  The court
made clear, however, that alter ego liability is appropriate where individuals
"influence and govern the corporation."  *Id.; see also Stark v. Coker*, 20 Cal.2d 839
(1942) (imposing alter ego liability on husband and wife where the wife was one of
two officers of the corporation); *Schoenberg v. Benner*, 251 Cal.App.2d 154, 59
Cal.Rptr. 359 (1967) (imposing alter ego liability on spouse who was a secretary of
the corporation, a director, and part owner, and to have had authority to sign
corporate checks).  Grice's status as CJI's COO and one of only a few executives
with supervisory and managerial authority renders alter ego liability appropriate.

[3] Defendants' contention that CJI could not have been nearing insolvency because it
made several payments to MTI in late 2015 is a red herring.  Those payments were
made under the threat of litigation and likely with the proceeds CJI retained by
selling millions of dollars' worth of MTI's inventory.  That CJI made de-minimus
payments to MTI out of the proceeds of the inventory that it failed to pay for does
not mean that CJI was not on the brink of insolvency.  In any case, resolving this
substantive factual question is inappropriate on a motion to dismiss.

Jones and Grice caused CJI to continue placing orders knowing that the company would not be able to make payments (FAC, at ¶¶ 27-29); that the Defendants ignored or delayed MTI's requests for payment until all of the orders were delivered to CJI (FAC at ¶ 30); and then sold the goods at significant margins during the busy Holiday season (FAC, at ¶ 31).  MTI further alleged that Jones and Grice funneled the profits generated by the sales of the merchandise out of CJI for their personal benefit, and made de-minimus payment to MTI only after the threat of litigation and to buy time to divert the remaining assets out of CJI (FAC, at ¶¶ 35-37)  CJI then shut down all operations, not filing bankruptcy, in an attempt to avoid creditors

Courts routinely hold that manipulation of an entity by its alter ego to the detriment of a creditor constitutes an inequitable result sufficient for an alter ego finding.  *NEC Elecs. Inc. v. Hurt*, 208 Cal.App.3d 772, 777–78 (Ct. App. 1989) (finding inequity where defendant depleted corporate assets by receiving $2.8 million in "loans" and by using corporate monies to pay for his personal expenses to the detriment of creditors); *Riddle v. Leuschner* (1959) 51 Cal.2d 574, 581-582 (finding inequity where defendants, "without regard to the interests of [the corporation] or its creditors, and at a time when [the corporation] was insolvent, transferred its assets to [another entity owned by defendants]…and that their manipulations of the affairs of the corporations were designed to foster their own purposes and operated to the disadvantage of [the corporation] and its creditors).  In addition, where an alter ego is unjustly enriched from the misconduct also is sufficient for a finding of an "inequitable result." *Johnson v. Serenity Transp., Inc.*, 141 F.Supp.3d 974, 986 (N.D. Cal. 2015) (finding inequitable conduct sufficiently alleged where sole owner profited from unlawfully instructing corporation to classify drivers as independent contractors instead of employees).   The FAC contains detailed allegations of the Defendants' misconduct that would amount to an "inequitable result" if the alter-ego allegations are not sustained – that Defendants' conduct would "sanction fraud and promote injustice."  (FAC, at ¶ 13).

**C.**    **MTI Has Adequately Plead Its Fraud Claims For Relief.**

*Fed. R. Civ. Pro.* 9(b) requires that fraud allegations "be 'specific enough to give defendants notice of the particular misconduct…so that they can defend against the charge and not just deny that they have done anything wrong.'" *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir.2001). "While mere conclusory allegations of fraud will not suffice, statements of the time, place and nature of the alleged fraudulent activities will." *Bosse v. Crowell Collier & Macmillan*, 565 F.2d 602, 611 (9th Cir.1977) (finding that plaintiff's fraud claim was sufficiently plead "though not a model of clarity"). Fraud allegations may be pleaded on information and belief when the facts constituting the fraud are peculiarly within the opposing party's knowledge. *Long v. Graco Children's Products Inc.*, No. 13-CV-01257-WHO, 2013 WL 4655763, at *4 (N.D. Cal. Aug. 26, 2013). "Such an exception exists where, as in cases of corporate fraud, the plaintiffs cannot be expected to have personal knowledge of the facts constituting the wrongdoing." *Zatkin v. Primuth*, 551 F.Supp. 39, 42 (S.D. Cal. 1982).  MTI has met its burden.

### 1.    Fraudulent Concealment is Adequately Plead

"[T]he elements of an action for fraud and deceit based on a concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, 248.  Concealment is actionable where, among other things, defendant had exclusive knowledge of material facts not known to the plaintiff or when the defendant actively conceals a material fact from the plaintiff.  *Limandri v. Judkins* (1997) 52 Cal.App.4th 326, 336-337.

resch polster & berger llp

The FAC adequately pleads fraudulent concealment with the following facts: From December, 2014 through August, 2015, CJI placed numerous orders with MTI with the understanding that Honour would fulfill those orders. For each order, the FOB date of delivery was several months after the order date, <u>see</u> Exhibit 2 to FAC. Although MTI does not traditionally extend payment terms to its customers, it provided this courtesy to CJI because of the parties past relationship, and permitted CJI to make payment within 90 days of receiving the merchandise in reliance upon CJI's ability to make payments for those orders. (FAC, at ¶ 23)

Only after all of the orders were placed, samples developed and approved, and goods delivered did MTI learn from CJI's principals, Jones and Grice, that CJI had been "in dire financial straights" "for some time". FAC, ¶ 27. Although Defendants seek to convince this Court that Jones and Grice did not know of CJI's poor financial condition when the orders were placed, as discussed in Section III(B), that assertion is belied by the facts. At the very time CJI placed its first several orders with MTI, it was in default to at least one creditor – Asean Corporation – for over $700,000 for non-payment of shoe orders, much like alleged here. Indeed, that lawsuit resulted in CJI paying Asean $716,334 in July, 2015. RJN, Exh. C. By the next month, CJI's bank cancelled its line of credit. FAC, at ¶ 27. These plead facts plausibly demonstrate that "Jones [and] Grice knew that CJI was insolvent or on the brink of insolvency and yet caused CJI to continue to place orders with MTI and Honour, knowing full well that CJI could not pay its obligations as they came due." FAC, ¶ 28. Indeed, Jones and Grice each have acknowledged to MTI that "they knew CJI was experiencing financial difficulties at the time the orders were placed" but never disclosed that CJI would be unable to pay for the goods. FAC, ¶ 29.

Moreover, in addition to fraudulently concealing CJI's financial condition at the time it placed orders for the goods, CJI continued to defraud MTI by accepting the goods knowing that it could not pay for them. As explained above, at the time CJI was forced to pay Asean nearly three quarters of a million dollars and had its

credit cancelled, many of the orders had not yet shipped.  The invoices attached to the FAC show that the "confirmed FOB date" for the orders CJI placed was months after the "order date."  Thus, a large number of orders were not delivered to CJI until well after CJI lost its line of credit, giving Defendants the ability to cancel those orders when they learned that CJI could not pay.  Instead, Jones and Grice accepted the goods knowing CJI could not pay for them, then ignored or delayed MTI's requests for payment until all of the goods had been shipped, leaving MTI unable to recover the merchandise once it learned CJI could not make payment. FAC, ¶ 30. The FAC identifies and attaches specific statements made by Jones and Grice which made MTI believe that payment from CJI was forthcoming. FAC Exh. 3-4. These statements, along with several payments made by CJI in past invoices bought CJI time to sell the inventory through the busy Holiday season.  FAC, ¶¶ 31-35. MTI refrained from filing suit (and pursuing a Writ of Attachment) believing that CJI would make payments, and by the time MTI realized that CJI would not meet its obligations, the company sold all of its inventory and closed up shop. With the many millions of dollars' worth of MTI's inventory CJI had sold, yet with insufficient funds to even file for bankruptcy, MTI pleads that Jones and Grice diverted those funds for their personal benefit. FAC, at ¶38.

MTI has properly plead the elements of fraudulent concealment against Jones and Grice[4]:  (1) Jones and Grice's concealment of a material fact -- CJI's financial

---

[4] Jones and Grice claim MTI's fraud claim fails to satisfy the specificity standard by "lumping" the Individual Defendants together in their allegations.  (Grice Mtn, at 14-15; CJI/Jones Mtn, at 13). "[T]here is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify false statements made by each and every defendant." *Swartz v. KPMG LLC*, 476 F.3d 756, 764 (9th Cir. 2007).  To state a fraud claim against multiple defendants, plaintiff must "identify the role of each defendant in the alleged fraudulent scheme." *Id.*  MTI did that, spelling out Jones' and Grice's roles in the company, statements made concerning CJI's finances, and attaching their emails.

position and inability to make payments, (2) a duty to disclose[5]-- Jones and Grice's superior knowledge of CJI's financial condition that was unknown and not reasonably known by MTI and active concealment of CJI's financial position with its promises to make payment and delays (FAC, ¶¶ 27-32; 60-64); (3) Jones and Grice intentionally concealed MTI's financial condition so that MTI and Honour would deliver the merchandise (FAC, ¶¶ 27-38; 66); (4) MTI was unaware of CJI's financial position and inability to make payments and "would not have expended time and resources in designing , manufacturing, and delivering the products to CJI" (FAC, ¶ 65); and (5) MTI sustained damages (FAC ¶¶ 25; 68-69).

## 2.     Fraudulent Transfer is Adequately Plead

The pleading standards above apply to claims for fraudulent transfers.  Under California's Uniform Voidable Transfer Act, Cal.Civ.Code § 3439.04, a transfer is voidable as to a creditor if the debtor made the transfer or incurred the obligation:

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor;

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:

(A) Was engaged or was about to engage in a business or a transaction

---

[5] Grice argues that the fraud claim fails because she had no duty to disclose anything to MTI about CJI's financial condition because she and MTI lacked a special relationship. (Grice Mtn, at 15).  That argument lacks merit as a matter of fact and law. MTI does not need to establish a direct relationship between MTI and Grice (e.g., her placing orders for her own individual benefit).  Such a nonsensical, counterintuitive requirement would mean that a plaintiff could never plead a fraud claim against a Company's directors, officers, or executives.  That is not the law.  As the court made clear in *Filet Menu, Inc. v. C.C.L. & G., Inc.,* 79 Cal.App.4th 852, 866, 94 Cal.Rptr.2d 438, 447 (2000), as modified (Apr. 6, 2000), "[d]irectors and officers of a corporation . . . but may become liable if they directly ordered, authorized or participated in the tortious conduct . . . personal liability may attach to them through application of the 'alter ego' doctrine [citation] or when the shareholder specifically directed or authorized the wrongful act."

resch polster & berger llp

1    for which the remaining assets of the debtor were unreasonably small in

2    relation to the business or transaction.

3    (B) Intended to incur, or believed or reasonably should have believed

4    that the debtor would incur, debts beyond the debtor's ability to pay as

5    they became due.

6    "Actual intent" to defraud may be found based upon eleven different factors, i.e.,

7    "badges of fraud." Cal. Civ. § 3439.04(b). Constructive intent to defraud exists "if

8    the debtor made the transfer...without receiving a reasonably equivalent value in

9    exchange for the transfer...and the debtor was insolvent at that time." Cal. Civ. §

10   3439.05; *U.S. v. Secapure*, No. C 07-1050, 2008 WL 820719 at *6 (N.D.Cal.

11   Mar.26, 2008).

12   Here, the FAC satisfies Rule 9(b) for both intentional and constructive

13   fraudulent transfers. MTI alleges that Jones and Grice fraudulently and without

14   reasonably equivalent value transferred assets to themselves at a time when CJI was

15   insolvent and could not pay its debts and with the intent to hinder and delay MTI

16   and other creditors from collecting their debt. (FAC, ¶72) MTI further alleges that

17   CJI received over a million dollars inventory for which it did not pay and sold that

18   inventory at high margins without making payment to MTI (FAC ¶73). Defendants

19   admitted to MTI that CJI was insolvent and could not pay its obligations, and yet at

20   the same time, as MTI alleges, Jones and Grice paid themselves compensation and

21   expenses. (FAC ¶74). MTI further alleges that Jones and Grice diverted to

22   themselves all the proceeds of the inventory that it sold since CJI had no money left

23   to pay creditors, including MTI. (FAC ¶74-75).

24   These above allegations are sufficient to state a claim for fraudulent transfer.

25   *See Kennedy Funding, Inc. v. Chapman,* No. C 09-01957 RS, 2010 WL 2528729, at

26   *9 (N.D. Cal. June 18, 2010) (finding that plaintiff adequately plead fraudulent

27   transfer by alleging that "Kennedy is a creditor of Chapman (SAC ¶ 68), that

28   Chapman transferred the Malpractice Judgment Proceeds with actual intent to hinder

resch polster & berger llp

Kennedy (SAC ¶¶ 69-70), that Chapman did not receive reasonably equivalent value from JIREH (SAC ¶ 7 1) and that Chapman was insolvent at the time of the transfer (SAC ¶ 71)").  To the extent the Defendants argue that MTI's allegation are not sufficiently specific, the particularized knowledge regarding the extent of the assets transferred are within the exclusive control of the Defendants.  *Smith v. Kern Cnty Land Co.* (1958) 51 Cal.2d 205, 209 (a plaintiff "need not particularize matters presumptively within the knowledge of the demurring' defendant").

### 3.   The Economic Loss Rule Does Not Bar Plaintiffs' Claims

Defendants wrongly assert that the tort claims of relief are all barred by the economic loss rule.  Defendants' contention ignores that Plaintiff's fraud claim is based on promissory fraud. Multiple courts have recognized that frauds committed to induce a party to enter into a contract are not barred by the economic loss rule. *Silver v. Goldman Sachs Group, Inc.*, 2011 U.S. Dist. LEXIS 54630 (C.D. Cal. May 19, 2011) (economic loss rule does not preclude recovery for promissory fraud, because a promissory fraud claim "can lie where the plaintiff alleges that the defendant has entered into a contract without intending to be bound by the terms of that agreement"); *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F.Supp.2d 1163 (C.D. Cal. 2009) ("The economic loss rule poses no barrier to a properly pled fraudulent inducement claim: '[I]t has long been the rule that where a contract is secured by fraudulent representations, the injured party may elect to affirm the contract and sue for fraud.'); *Yost v. Nationstar Mortg.*, LLC, 2013 U.S. Dist. LEXIS 128504 (E.D. Cal. Sept. 6, 2013) (similar); *Missud v. Oakland Coliseum Joint Venture*, 2013 U.S. Dist. LEXIS 29915 (N.D. Cal. Mar. 5, 2013) (similar).

Defendants' reliance on *Oracle USA, Inc. v. XL Global Servs.*, 2009 U.S. Dist. LEXIS 59999 (N.D. Cal. July 13, 2009) is misguided.  There, Oracle brought a claim premised on XL falsely promising that it would pay the money it already owed Oracle under the parties' existing agreement, thus causing Oracle to provide

1  free consulting services. *Id. at 14*. As the Court noted, "[t]he only harm to Oracle

2  was its failure to receive payment." *Id. at 19*. Thus, the Court rejected a separate

3  fraud claim. Here, Plaintiff's fraud claim is based on false promises and

4  concealment to induce Plaintiff to accept the Purchase Orders in the first place, not

5  subsequent promises that they would perform on an agreement after it had already

6  been signed.  As the *Oracle* court itself noted, there is an exception to the economic

7  loss rule where "a contract was fraudulently induced." *Id.* at 13.

8      Further, Plaintiff suffered harm separate from Defendants failure to pay.

9  Specifically, the reputational harm as a result of Defendants' actions.  Honour relies

10  on Plaintiff to protect its interests, and to only enter into and assign purchase orders

11  from reputable companies.  There is, therefore, a direct harm to Plaintiff's business

12  reputation as a result of Defendants fraud.  Defendants are responsible for "any

13  damage which [Plaintiff] thereby suffers" as a result of their fraud. Cal. Civil Code §

14  1709. This includes such reputational harm.  *See e.g.*, *Maffei v. Allstate Ins. Co.*,

15  2006 U.S. Dist. LEXIS 66726, *12 (E.D. Cal. Sept. 7, 2006).

16      **D.   <u>MTI Has Adequately Pled Standing As a Third-Party Beneficiary.</u>**

17      "A contract, made expressly for the benefit of a third person, may be enforced

18  by him. . ." Cal. Civ. § 1559.  A person seeking to enforce a contract as a third party

19  beneficiary "'must plead a contract [] made expressly for his [or her] benefit and one

20  in which it clearly appears that he [or she] was a beneficiary.'" *Schauer v. Mandarin*

21  *Gems of California, Inc.*, 125 Cal. App. 4th 949, 957 (2005) (quotations omitted).

22  "Expressly" means that the promisor, in this case CJI, "must have understood that

23  the promisee [MTI] had such intent . . No specific manifestation by the promisor of

24  an intent to benefit the third person is required." *Id.*

25      The FAC meets the threshold of demonstrating MTI's standing as a third

26  party beneficiary.  First, contrary to CJI/Jones' contention, the contract, i.e., the

27  purchase orders, <u>expressly</u> contemplated MTI as a beneficiary by listing "Tucker" as

28  the "Vendor."  *See* Exhibit 1 to FAC.  Second, the FAC pleads that when CJI sought

to place orders, it did so through MTI, "with the understanding that the purchase orders would be assigned to an overseas third party for fulfillment."  FAC ¶¶ 17-18. Those orders were assigned by MTI to Honour, who placed orders with the Factories to deliver the product to CJI, and for which Honour invoiced CJI.  FAC ¶¶ 18-20.  The FAC further alleged that the contracts "were expressly made for . . . Plaintiff's benefit" and that "MTI, Honour and the Defendants intended that the Parties Contract would benefit MTI . . ."  FAC, ¶ 22.  MTI has, therefore, alleged that CJI understood that its purchase of the shoes was for MTI's benefit.  *See Schauer,* 125 Cal. App. 4th at 957 (finding that jeweler "must have understood" that plaintiff's purchase of engagement ring was to benefit his wife, therefore, she had standing as third party beneficiary to sue for jeweler's sale of inferior ring to husband).  MTI's standing as a third party beneficiary is, therefore, adequately plead.

### E.   The *Remedy* Of Punitive Damages Is Available Where The Underlying Cause of Action Is Assignable

Whether or not punitive damages are assignable is irrelevant, insofar as MTI has expressly brought the fraud claims for relief on both *its own behalf* and as an assignee.  Nonetheless, Defendants assert that, "California has adopted the rule set forth in *French v. Orange County Inv. Corp*. (1932)125 Cal. App. 587, 591 …that punitive damage claims are personal to the person injured and may not be assigned." (CJI Motion to Dismiss, 14:7-9, citing to *People v. Superior Court* (*Jayhill Corp*.), 9 Cal.4th 283, 287 (1973) and *Jackson v. Rogers & Wells*, 210 Cal.App.3d 336, 349 (1989).  Defendants' conclusory assertion based on cases from 1932, 1973 and 1989 ignores more recent analysis which recognizes that where an underlying claim is assignable, all remedies that flow from that claim are assigned.

As noted by *In re Badiou*, 527 B.R. 692 (Bankr. E.D. Cal. 2015), the *French* Court, in relying on *Swallow v. Tungsten Products Co.*, 205 Cal. 207, 219 (1928)*,* quoted only that portion of *Swallow* which states, "a bare right to file a bill in equity

1   for fraud committed upon the assignor will be denied because the transfer of such

2   right is against public policy" *French*, 125 Cal.App. at 591.   The *French* Court

3   failed to address that *Swallow* went on to distinguish between the transfer of a "bare

4   right" to assert a fraud claim and the transfer of a real or personal property interest

5   coupled with the assignment of a claim for fraud associated with that property.   In

6   fact, *Swallow* relies specifically on *Emmons v. Barton,* 109 Cal. 662 (1895) for the

7   proposition that, "a mere right to complain of fraud is not assignable. But the court

8   said that this rule 'does not apply to a case where the right to sue for a fraud is

9   merely incidental to a subsisting substantial property which has been assigned, and

10  which is itself intrinsically susceptible of legal enforcement." *Swallow*, at 219.

11      Put simply, and as reflected in California Civil Code § 954, claims (things in

12  action) are assignable; the exception being "wrongs to the person, reputation, or

13  feelings of the injured party, or to contracts of a purely personal nature, like

14  promises of marriage." *In re Badiou*, 527 B.R. at 699 (citing to *Rued v. Cooper*, 109

15  Cal. 682, 693 (1893).)   In rejecting the assignability of punitive damages, the cases

16  relied upon by *French* and *Jayhill* were simply following this long standing

17  principal of California law and rejecting punitive damage claims that were purely

18  personal in nature.   In fact, *Jackson*, which is relied upon by Defendants, dealt

19  specifically with the assignment of fraud and breach of contract claims that were

20  nothing more than disguised legal malpractice claims – i.e., an unassignable claim.

21      As a result, the more recent cases do *not* apply a blanket rule against

22  assignability of punitive damages.   Rather, recognizing that punitive damages are a

23  remedy rather than a separate cause of action (*Kizer v. County of San Mateo*, 53

24  Cal.3d 139, 148), the analysis focuses on whether the underlying claim is

25  assignable.   "It is the nature of the cause of action that determines whether the

26  punitive damages permitted by it are assignable or not." *Diehl v. Starbucks Corp.*,

27  No. 12CV2432 AJB BGS, 2014 WL 295468, at *14 (S.D. Cal. Jan. 27, 2014)

28  (discussing and quoting the analysis in the superseded opinion in *Nelson v. Exxon*

*Mobil Corp.*, 179 Cal.App.4ᵗʰ 663 (2009), and rejecting "a blanket rule precluding the assignment of punitive damages in any and all actions."). If that claim is assignable, then punitive damages – which are not remedial but designed to punish and deter (*Newport v. Fact Concerts*, 453 U.S. 247, 266–267 (1981)) – are an available remedy to the Assignee. *In re Badiou*, 527 B.R. 692. *See also, Pub. Serv. Mut. Ins. Co. v. Liberty Surplus Ins. Corp.*, 51 F. Supp. 3d 937, 951 (E.D. Cal. 2014) (allowing for the assignability of punitive damages in an otherwise appropriately assigned claim); *Continental Cas. Co. v. Royal Ins. Co. of America*, 219 Cal.App.3d 111, 125 n. 6, 268 Cal.Rptr. 193 (1990).[6]

## F.   <u>Leave To Amend Should Be Granted</u>

"[L]eave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts. *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) ("[a]lthough we agree that [plaintiff] did not comply with Rule 9(b), we hold that the district court erred in denying him leave to amend"). In the unlikely event the Court is inclined to grant the Motions, Plaintiff requests the opportunity to amend.

## IV.   <u>CONCLUSION</u>

Based on the foregoing, Defendants' Motions should be denied in full.

Dated: August 22, 2016             RESCH POLSTER & BERGER LLP

By:   _____/S/_____
                    ANDREW V. JABLON
                    Attorneys for Plaintiff

_____

[6] This analysis puts California in line with the rest of the country. *See, e.g.*, *Cuson v. Md. Cas. Co.*, 735 F.Supp. 966, 970–71 (D.Haw.1990); *Oppel v. Empire Mut. Ins.*, 517 F.Supp. 1305, 1307 (S.D.N.Y.1981); *F.D.I.C. v. W.R. Grace & Co.*, 691 F.Supp. 87, 92 (N.D.Ill.1988); *Kaplan v. Harco Nat'l Ins. Co.*, 716 So.2d 673, 666 (Miss.App.Ct.1998); and *Allstate Ins. Co. v. Axsom*, 696 N.E.2d 482, 487 (Ind.App.Ct.1998).

1

## <u>PROOF OF SERVICE</u>

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3
4

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 1840 Century Park East, 17th Floor, Los Angeles, CA 90067.

5
6
7

On August 22, 2016, I served true copies of the following document(s) described as **PLAINTIFF MARK TUCKER INC.'S OMNIBUS OPPOSITION TO DEFENDANTS CATHY JEAN, CARL JONES, AND CATHY JEAN GRICE'S MOTIONS TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** on the interested parties in this action as follows:

8
9
10

Martin P. Eramo, Esq.
1590 S. Coast Highway, #13
Laguna Beach, CA 92651

Attorney for Defendants Cathy Jean, Inc.;
and Carl Jones, aka Bud Jones

Tel: (949) 494-9999
Email: mperamo@aol.com

11
12
13
14

Beverly A. Johnson, Esq.
JOHNSON & BERTRAM LLP
1 Park Plaza, Suite 600
Irvine, California  92614

Attorney for Defendant Cathy Jean Grice

Tel:  (949) 852-4474
Fax:  (949) 861-9140
Email: bjohnson@johnsonbertram.com

15
16
17

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

18
19

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

20

Executed on August 22, 2016, at Los Angeles, California.

21

22

/s/ Noemi Lynch

23

Noemi Lynch

24

25

26

27

28

resch polster & berger llp

528343.1